May it please the Court? Yes, I am, Your Honor. I'd like to reserve five minutes, if I may, for rebuttal. The first issue I'd like to address is whether every plaintiff bringing a claim under the Fair Credit Billing Act must prove detrimental reliance as an element of causation in their case. We submit that the answer to this question must be no, or the only plaintiffs who stand to recover under the Fair Credit Billing Act are those plaintiffs who bring claims that are similar to a misrepresentation. Is there any case law that suggests that in an FCBA case that detrimental reliance must be proven? The only cases we have been able to find are cases that are brought under the original provisions of the Truth in Lending Act. So that's a TILA claim, though, right? Right. And that's different, is it not? That's true. So we submit that because the statute says that plaintiffs are entitled to actual damages sustained as a result of the failure made by the creditor, that a plaintiff simply has to prove causation rather than a higher degree of culpability like detrimental reliance. Otherwise, many claims would not be able to be brought at all under the FCBA. The Smith and Farrell cases, which are the only cases from the Ninth Circuit, are both claims where the provisions of the statutes that were invoked were under the original Truth in Lending Act. On the second issue of whether or not a plaintiff is entitled to recover multiple $1,000 recoveries, we believe that consumers are entitled to recover $1,000 for each violation of the Act unless that consumer falls into the exception that's written into the statute, which is subsection G of 1640. Subsection G states that plaintiffs who are bringing claims for multiple failures to disclose are entitled to only one $1,000 recovery. This is not a failure to disclose case. Correct. The statute, the Belmont case, which is the only published case with similar facts, examined the definition of material disclosures in the statute, and that definition includes things like the annual percentage rate or the finance charge associated with the loan. That's a New York District Court case, right? Correct, yes. So we're not bounded in any way by that. You're just appealing to the reasoning of that case? We are, Your Honor. And that case has not been overturned by the Second Circuit. The only case is that... Was it appealed to the Second Circuit? It was not to my knowledge. Okay. It may have settled. It's hard to overturn them if they don't appeal it. Excuse me? I said it's hard to overturn them when they don't appeal it. That's true. And I should say the Second Circuit has not had another opportunity to examine the issue. If we were to agree with you that detrimental reliance is not the issue in this case, do you have any authority for the recovery of personal time spent on this contest with the bank? That issue is examined below. We argued that Mr. Lyons should be entitled to recover his personal time other than the time he spent as a lawyer. And I don't have the name of the case in front of me, but there was authority out of Oregon that time other than professional time could be recoverable. In addition to recovery of the time he spent, the District Court found that the harm to Mr. Lyons' credit rating could also be a form of economic or actual damages that would be recoverable. A lot of people spend an enormous amount of personal time dealing with collection agencies and banks and other bureaucracies that are somewhat mindless and somewhat arrogant. And they're living in this organized society, and they can't recover for the personal time. We believe that Mr. Lyons can recover, but just not for his professional time. And, again, we found authority and cited that authority below, which I believe is in the record for that proposition. And Judge Acosta found in our favor on that issue. If we were to agree with you and send this back to the District Court, are you arguing that we should adopt some kind of a bright-line rule in terms of the damages issue or simply send it back and let the District Court consider that in the first instance? Are you addressing the $1,000 recovery? Correct. I would argue that the statute says clearly in 1640 that a plaintiff is entitled to $1,000 for a violation. I think that the District Court could exercise discretion in some cases if it's clear that a plaintiff would be entitled to some sort of a windfall. But in this case, there would be no such windfall. Well, the $1,000, doesn't that just apply to the disclosure issue that was raised earlier? That is our argument, yes. So if this is not a disclosure issue but rather a problem of multiple attempts to collect, I think Judge Goodwin has put his finger on the thing that concerns me a little bit, is how do you measure these kinds of things? I mean, perhaps in terms of lost, you know, you can't buy a house because your credit rating is fouled up. You know, you can show that. But you've got, you know, pain and suffering. You've got embarrassment, et cetera, et cetera. Are those considered? In terms of the statutory damages, no. The statutory damages provision... It just says actual damages, right? Yes. Maybe I was confused on your question. The statute provides that a plaintiff is entitled to actual damages and statutory damages. The statutory damages provision holds that for each violation that the creditor makes of the statute, a plaintiff is entitled to a minimum of $100 and a maximum of $1,000 for each violation. Even on the multiple attempts to collect the debt, that $1,000 applies? Is that your position? We believe that each attempt to collect the debt leads to a separate $1,000 recovery for the plaintiff. Otherwise, Chase would be allowed to violate the statute once by not responding properly to the billing dispute and then violate the statute as many times as it pleased with no recourse. So you're saying it's $1,000? In this situation, it's $1,000 plus actual damages? Is that what you're arguing? Yes. The statute very clearly calls for a recovery of actual damages and statutory damages. How do you calculate that? I had a case called Cooper v. the FAA where we dealt with that issue under the Privacy Act and explored it, although we had some in somewhat analogous statutes. It's just not defined. Are we supposed to define that? Should we send it to the district court, let the district court figure it out? What do we do? As to the actual damages, it would require some sort of expert testimony below as to what the value of the time and the damage to the credit report would be. I understand if you set out the parameters, that's what would be required. But I guess the point I think that Judge Goodwin was pointing out, you've got some people who are really efficient, they can go and get all this done. You might have other people that might spend weeks and weeks and weeks and weeks, and they may say, what if they're unemployed? How do you measure those damages? Are we creating a Pandora's box here if we adopt some kind of a bright line consideration? The court need not reach that issue. The only issue before the court is whether a consumer who does not prove detrimental reliance is entitled to actual damages at all. That's something I think what you're saying is that the district court can work on and figure out in the first instance. Yes, that's correct, Your Honor. As to the $1,000 issue, our argument is that Chase has the power to communicate with its customers and has a burden to communicate with its customers. This is a consumer protection statute that was adopted by Congress. If a consumer is limited to one $1,000 recovery, there's really no incentive for Chase to behave differently. All it needed to do was read its mail and communicate with Mr. Lyon. Here, instead, it called Mr. Lyon's house during dinner time for several days in a row. It tried to take out money from his U.S. bank account through an automatic withdrawal system. It sent him incorrect billing statements and so forth. It should be accountable for each violation under the statute. The third issue in our first appeal is whether Mr. Lyon stated a claim under the Oregon Unlawful Debt Collection Practices Act. The lower court found that under an Oregon case, which was called Porter, we had failed to state a claim because we argued that there was no debt. With respect to the district court, we think that it misread the Porter opinion and that this court should overturn and send the case back to the lower court for Mr. Lyon to have a chance to prove that Chase violated the Oregon Unlawful Debt Collection Practices Act. The statute states that a creditor violates the Oregon law if it attempts to collect a debt when it has reason to know that its right to do so does not exist. Here, Chase had no right to attempt to collect a debt because it violated the Fair Credit Billing Act in the first instance by failing to respond to Mr. Lyon's written billing dispute. Porter held that in a case where a plaintiff argues that there is no debt, that this is distinguishable and there's no right to bring a claim under the Oregon Unfair Debt Collection Practices Act because a debt is not the same as a right. We think that our case is clearly different than Porter because of the violation of the Fair Credit Billing Act. In addition, we've brought a motion to have this question certified to the Oregon Supreme Court. Although we believe that this court can decide the Oregon issue by reading Porter, if there's any question as to whether or not Porter applies, we think the proper court to decide the question is the state court. Well, we don't really need to do that because we've got a former member of the Oregon Supreme Court here and he's watching this from this beautiful picture. There are a few Oregon cases that deal with Section 2K and we think that our case is really in line with those cases. You're thinking of ISIM? Yes. Because the power company there had no right to turn off the electricity or threatened to turn off the electricity at the plaintiff's house, they could not attempt to collect the debt here. It's the same factual scenario. All right. I'm going to save some time. Thank you, Your Honor. May it please the Court, John Langsdorf for Chase. Your Honor, put your finger right on it when you talked about Pandora's Box. If you rule respectfully in the plaintiff's favor in this case. Let me tell you something. We already have a Pandora's Box. You know, that's if you try to call a company like Chase and try to talk to someone other than a machine or try to get someone to call you back that has any authority. That's the Pandora's Box in our society today. So that's the box I'm looking at. What does a person do when they have a situation like that? I mean, how do you call and just get a standard answer? Let me explain what happened. Tell me why Chase didn't straighten this thing out in 15 minutes. Because as our witness testified in front of the jury, Your Honor, mistakes were made. There's no question about that. Well, they're a big company. They are a huge company, Your Honor. Yeah, but they shouldn't make mistakes. But keep in mind, Your Honor, we tried this case to a jury. Oh, I know that. I know that. And the jury found that we did not act willfully or with malice, Your Honor. We got a defense verdict.  I know that. But why didn't your company straighten it out right from the beginning? It's a simple matter. Can I explain? Yeah. What happened is this, Your Honor. How many names of people have dealt with this? Do you know who they are? Well, of course I did when we tried the case, obviously. But I don't have the names in front of me right now, Your Honor, because, again, we tried this issue to a jury and we won. The jury found we did not act willfully, we did not act with malice, and we got a defense verdict. Now, what happened is this, Your Honor. Mr. Lyons' wallet was stolen. He called us up. We immediately ---- Tell the facts so we all know. Okay. We had a ---- we mistakenly put a $645 credit on his account in his favor. That was a mistake. Yeah. We found out the mistake and we put on a $645 debit. It became a zero. There was no debt. It was a zero. And he wrote us because he ---- Can I ask you this? Did anybody call him up and tell him ---- Yes. And tell him that we made a mistake? Yes. How long did it take for that to happen? When his letter came in, Your Honor, I believe the record shows, although this is not the issue on appeal, but I believe the record shows that he received a telephone call from Chase and he was told, don't worry about it, it's not a problem, because he called about the debit, the $645 charge, which eliminated the credit, and he was told, don't worry about it. The problem is that person pushed a button, which took the flag off. We have to respond to his written letter, and there was never a response to the written letter. Who's that person? I don't remember the name. Markford Chase? Well, of course, Your Honor. Yes. Yes, sir. Can I switch us over to the legal issues on appeal? The facts are very important here, but I ---- let's start with the detrimental reliance issue. Yes. Does the bank agree with what we discussed with opposing counsel that detrimental reliance, as far as the case law is concerned, only applies to failure to disclose and not to, you know, multiple attempts to collect? No. I'm sorry. Okay. What's the bank's position and why? The bank's position is this, Your Honor. This is a failure to disclose case. Number one, there was one mistake made, one mistake, and that is we didn't send a letter in response to Mr. Lyon's letter. Mm-hmm. Now, the debt that we were trying to collect was charges that he ran up. Remember, the 645 and the 645 became a zero. There was no debt. The disputed debt didn't exist. Now, we shouldn't have called in because we didn't send the letter. We conceded that, and we admitted liability for that. But detrimental reliance is required, Your Honor, by the Ninth Circuit case, Smith. It's on point. It's the end. That's if you assume it's a disclosure case. Do you agree with that? If we construe what happened here as being basically the attempt to try to collect, multiple attempts to collect as opposed to disclosure, then those cases don't really protect you, do they? I know, Your Honor, because 15 U.S.C. 1640G, which is the multiple failure to disclose, specifically refers to Part D of the Act, and Part D is the Fair Credit Reporting Act. So to hold, as counsel suggests, and to say that this is some other kind of violation, not a disclosure violation, and the Fair Credit Billing Act doesn't apply, you're going to read Part D out of the statute. And then we end up with the Pandora's box. After, you know, what are the purposes of these statutes? To protect the consumer. Isn't that true? Absolutely. And if there's any doubt or ambiguity, shouldn't that be resolved in favor of the consumer? No. No. Well, should it be resolved in favor of the bank? Your Honor, there is no doubt. 1640G specifically refers to Part D, the Fair Credit Billing Act. And is this a nondisclosure case? Of course it is. We didn't write him back and disclose to him that we either agreed or disagreed with his billing request. No, disclosure goes to things like interest rates and all the rest of that print that's, that's, it could be a consequence if you're late or all the rest of it. If you, Your Honor, if you create this new rule that plaintiff advocates, you're going to create an extraordinarily difficult situation because you're going to have increased litigation and you're going to have litigation over whether or not it's a disclosure. Can I tell you something? Yes, sir. You're giving me the Floodgates argument, right? Yes. And I've been sitting on the bench now for 45 years and my feet are still dry. Well. I just read something in one of the, in one of the legal journals about the Floodgates argument. Well, let's look at the Floodgates argument. We've got the Genco case, which is identical to this case in the facts. It was a failure to respond to a billing inquiry. It's identical. They sued for $287,000. They claimed 287 violations. The plaintiff could sit back without any detrimental reliance, without any out-of-pocket damages, as Mr. Lyon is, and he could sit back for five years, getting a billing statement each month, and that's a new violation, and sue for $287,000. We don't have that case. I don't know what the damages are or something. It goes back that the learned district judge will start on that path. I'd appreciate your help on something. Yes, sir. Perhaps I misunderstand the facts of this case, but I thought, I remembered reading that the bank contacted a credit reporting agency, informed them that he was delinquent, contacted other, contacted him, that people were dunning him, and so on. Am I mistaking the facts of this case? No. There were phone calls made from Chase to him. That occurred, Your Honor, and also his credit was reported to the credit bureau agency. Well, those aren't disclosure issues, are they? Well, yes, because the violation goes back to the single occurrence. I appreciate that, counsel, but just help me with this, if you will. Let's assume for a moment that that initial matter was a disclosure violation. After that, when you contact the credit agency and you have somebody dunning him, those aren't disclosure requirements, are they? Those aren't disclosure issues. But, Your Honor, the only reason that we should not have called him and should not have reported him to the credit bureau is because we didn't send the letter. You can't set those aside as separate violations, Your Honor, because it all is part of the single violation. The one time event. So are you saying that, at least based on your factual circumstance, let's assume that there's that one letter and you send, I know you wouldn't ever do anything like this, but stand there and yell and scream and threaten and so on. You wouldn't do that, I know. But you're saying there's just no basis other than the $1,000 disclosure because it all ties back to the original deal. Your Honor, if we had sent out Johnny the Legbreaker, we would have lost the defamation case, Your Honor. I want to separate it from the defamation case. You know, we had a jury listen to this case. I appreciate that. And Genco said, this is the issue that Genco Court talked about. Should she be awarded $1,000 as a single recovery limitation? Does it apply only to a failure to disclose, but not also to what plaintiff in this case has dubbed substantive violations? That's on our brief, 827. Now, Genco is a Texas district court. I admit that, Your Honor, and it's also unpublished. I agree. We really appreciate the fact that you want us to adhere to the reasoning of that case. That's right. But it has no authority that binds us in any way. Absolutely not, nor am I saying that. I'm just saying the reasoning of the judge there is dead on point. And the judge held Section 14G, 1640G, the statute I mentioned that refers to Part D, clearly states that the failure to disclose any information under the relevant will entitle a consumer to a single recovery. But doesn't it, again, get down to the question of what constitutes a disclosure aspect of the case and something else, attempts to collect? That's what I'm struggling with. I get your point about what the bank originally failed to do, but I'm having difficulty in, you know, expanding the tent from the original disclosure issue to all these other attempts to collect. Because, you know, Judge Pegerson pointed out at the beginning, and perhaps even you personally have had this kind of thing, that we live in a very complex world. If you have a big entity that's not listening and contacting crediting companies and so on that affects your credit and perhaps your job and so on, it's very, very frustrating. It is. And it's a separate issue than the disclosure issue, is it not? No, it's not, Your Honor. Do you have any authority for the proposition that contacting a credit rating company or making dunning calls to the creditor at night is a disclosure violation? Do you have any authority to that effect? Yes, Your Honor. I just talked about the Genco case. Okay. I mean, that's not Ninth Circuit authority. Let's assume for a moment that I treat an unpublished Texas district court case as not being any authority that I have to consider. I will read it again. But is there anything from the Supreme Court, anything from our or any circuit, any Federal circuit anywhere that deals with this discrete question? Well, yes, Your Honor. I think there are cases. Because, remember, we have to go to the damages issue. We have to go to the damages issue. If Mr. Lyon had recovered actual, suffered actual damages as required by Smith, the Ninth Circuit case, he would have recovered his actual damages. He stipulated he had no damage. He had no out-of-pocket loss. No out-of-pocket damages. No out-of-pocket damages. And he has no other proof of damages. At trial, he had no evidence that he suffered any damage because of our report to the Credit Bureau. But isn't that a different issue than whether that if he had any, he could obtain them? My understanding is it's the bank's position that even if he had them, he's not entitled to them. He's entitled only to $1,000 and that's it. Is that correct? Yes, Your Honor. That's correct. Okay. So the issue of proof would be a matter for the district court to consider, would it not, if we don't accept your position? Well, Your Honor, let me emphasize this point. There is no case in the United States that has accepted the proposition advocated by the plaintiff, and that is that there are different types of truth-in-landing violations. There are failure-to-disclose violations and other types. And if you accept that distinction, which no case has ever accepted, you're going to create the gango disaster where you're going to have people suing for $287,000 for 287 violations. The Supreme Court needs lots of work. They're very grateful to our circuit. That may be true, Your Honor. Otherwise, they'd be out of business. Point well taken. But, Your Honor, here we don't even have to get there because there's no damage. This man has not been damaged. And you can't recover your time. There's no authority anywhere for that proposition that he can recover his time. And the State and the State courts, there is a violation of the rule. How about pain and suffering? Pain and suffering? Your Honor, under Oregon law, you can't recover pain and suffering unless you've been physically injured. I understand.  There is no case that the State can recover pain and suffering. And I understand there's no case. I'm just saying that. Blood pressure. Well, you know, Your Honor, I'm sorry. Sometimes life is complex and sometimes these problems happen. That's why we admitted the violation. We admitted he's entitled to recover $1,000. Then we tried the defamation case and we prevailed. And I'm almost out of time, Your Honor. I just want to mention one thing on attorney fees. Remember, it's an abuse of discretion. And Judge Costa said, I can't figure this out. It's impossible. And it's not – that's not a legal decision. That's a factual decision. He couldn't figure it out. Figure what out? What attorney fees the plaintiff was entitled to recover, because it was blocked billing and he couldn't distinguish between the Fair Credit Billing Act attorney fees and what went to trial on defamation, Your Honor. Well, most people that hire lawyers today can't figure out what the bill is. That's why it's so much, Your Honor. Isn't that true? Well, but the plaintiff had the burden, Your Honor. And Judge Costa said they didn't need it. The rejection, though, in total, doesn't that somewhat fly in the face of Merrick v. Chesney, the 1985 Supreme Court case? I don't think so, Your Honor. No, I don't. Okay. Because in that case, there was an ability to try to figure it out. Judge Costa said, I can't do it.  Thank you. Thank you, Your Honor. Thank you. With my remaining time, I just want to address a few points that opposing counsel made. The first was with respect to the question of whether or not there are multiple violations of the statute. Opposing counsel says that there's one violation, and that leads to all of the different violations for which we state we're entitled to recover $1,000 for each. I think one way for the court to look at it is to examine the statute and the different provisions of the statute that Chase violated here. It's not just a violation of a disclosure requirement, as those disclosures are defined in the statute, but also violations by attempting to collect and threatening to attempt to credit reporting agencies and calling their house numerous times. All of those fall under different provisions of the statute and should be separately recoverable. Let's assume for a moment that you're right. I still struggle with the concept of whether actual damages can include non-monetary loss. Let's assume for our discussion that it does. What would it include? We've argued that we should be able to recover for the time that Mr. Lyons spent other than his professional time. That's one category. The other category. How does that work practically? Let's say you've got three different people. You've got one person who is an unemployed construction worker, can't find any work, and who has worked at various wages. Let's say a second person is male or female, is a house husband, house person, whatever, who has not paid a wage, but who performs a valuable service to society. And then you've got a brain surgeon. Are you saying that the damages that they would suffer in terms of lost time is equivalent to what you would have in, say, an automobile accident or something like that? Is that what we're looking at here? Essentially, we argue that it would require an expert to put some sort of a number on an hourly rate for the damages. And the other category that we have, aside from time, which is admittedly difficult to pin down, is the damage to a credit rating. And that may be easier to put a monetary amount on. I'm sensitive to what counsel for the bank pointed out in terms of this Texas case. We've got a massive amount of damages that seem wholly disproportionate to what happened here. But let's assume for a moment that it needs to be explored. Isn't what we need to do to send it back to the district court, for the district court to consider this in the first instance and just say we send it back for you to determine what damages, if any, are proven here, something to that effect? Yes, Your Honor. The question of what damages are appropriate would be for the district court to decide. And as to the floodgates argument that Mr. Langslet has raised, it's much easier for Chase, as a big bank, to flip the switch and stop these calls. They can make systematic changes that keep plaintiffs from being able to make these allegations of 287 violations very easily. And the incentives should be there in the statute for them to make those changes because this is a consumer. You're saying that they have the remedy in their own hands, in effect. That's correct. Finally, as to the attorney's fees, with my last seconds, we think it's an abuse of discretion because the judge below didn't determine whether or not our defamation claim and our Fair Credit Billing Act claim were related. And because they were so closely tied, it would have been impossible for us to bill our time by claim, which, in fact, is not required by the district court below. Thank you. Thank you. Enjoy the argument. Both cases are well argued. We'll submit this matter.
judges: Goodwin, Pregerson, M Smith, Cjj